## JAMES H. CLARK

*v.*

CLARK D. AUGUSTINE and DELANCY CARTER, executors of Luke Clark, deceased.

[Filed January 21st, 1902.]

1. A statute of limitations creates a mere personal right, which may be waived by the defendant.

2. Where a defendant has, by deception or by any violation of duty toward complainant, caused him to subject his claim to the bar of limitations, equity will not permit him to hold the advantage thus obtained.

3. Upon the facts shown—*Held*, to justify a preliminary injunction restraining the executors from raising the defence of limitations in the suit on the claim, whether or not they intended to mislead complainant.

On bill, &c.   On motion for injunction.

*Mr. William H. Speer, Jr.,* for the complainant.

*Mr. James A. Gordon,* for the defendants.

STEVENSON, V. C.

The complainant is prosecuting an action in the supreme court of this state against the defendants, who are the executors of his father, to recover the sum of $5,200 alleged to be due for services rendered by the complainant to his father in his lifetime.

This bill is filed to obtain an injunction restraining the defendants from attempting to maintain a defence which they have pleaded in the above-mentioned action at law.  The defence thus objected to is that the complainant is barred of his action by his failure to bring suit within the three months allowed by the statute after the executors had given him written notice that his claim was disputed.  *Revision of Orphans Court act, P. L. of 1898 p. 740 § 71.*  The complainant insists that to permit the

44

Clark *v.* Augustine.

defendants to interpose the defence of this statute of limitations would be grossly inequitable and in effect a fraud.

The essential facts are not in dispute. They are as follows:

Pursuant to section 67 of the Orphans Court act, the defendants notified creditors to bring in their claims against the estate, under oath, within nine months thereafter. The complainant duly presented his claim. The notice that the executors disputed and rejected the complainant's claim was then served upon him. This notice bears date November 2d, 1899, and the defendants aver in their plea that it was served on that day, while the complainant alleges in his bill that it was not served until about December 8th, 1899. I do not think that it is necessary to ascertain this date more definitely.

The executors thus availed themselves of the statutory provisions which are designed to secure prompt settlement of the estates of deceased persons and which largely curtail the rights of creditors in respect of the prosecution of their claims. The creditor is brought up sharply either to abandon his claim or institute a suit within three months to enforce it. This is an old and well-established statutory proceeding in favor of the settlement of estates, before which the rights of creditors give way. Under recent legislation (*P. L. of 1889 p. 428, Orphans Court act,* §§ *72, 73, 74*) creditors who fail to present their claims in time may subsequently prove them against any surplus, and in case the executors desire to dispute the claim they may give notice similar to the one already referred to, and thereupon the creditor (§ *74*) must take his choice to abandon his claim or bring suit for the establishment of it within one month from service of such notice upon him.

It would seem to be in accordance with the plainest principles of equity that executors who take advantage on behalf of their estates of these special statutory proceedings, whereby they compel creditors to elect between the abandonment of their claims or the prompt institution of actions for their enforcement, should not by their conduct, either of omission or commission, prevent the efficient institution of such actions as the creditors may elect to bring within the brief time allowed for that purpose.

In the present case both of the executors were residents of the

State of New York during the whole of the period under consideration. They came from New York to New Jersey for the performance of their duties as executors, and, as we have seen, instituted the proceedings here which compelled the complainant to bring his suit for the enforcement of his claim in case he did not wish to abandon it, and then they retired again to New York so as to make, in the absence of further action on their part, the efficient maintenance of such a suit an impossibility.

Statutes of limitation generally except from their operation the periods of time during which the defendants who plead them have resided out of the state in which the action is brought. No such exception is contained in the statute under consideration in this case for a very manifest reason. An estate should not be deprived of the benefit of this statute on account of the non-residence of the executor or administrator. But the non-resident executor or administrator plainly owes a special duty to the creditors whom he calls upon to sue with reference to the actions which he in effect compels them to bring. It can hardly be supposed that it was within the contemplation of the legislature that executors or administrators, administering an estate in New Jersey, would or could cut themselves off from service of process by continuously residing out of the state; that a non-resident trustee would be permitted to start the statuory machinery necessary for the prompt settlement of the estate in his hands involving the institution of lawsuits by creditors, and then provide no means by which such lawsuits could conveniently or effectively be brought and maintained. The legislative intent is clear. The representative of the estate in New Jersey may get the benefit of a prompt settlement of all outstanding disputed claims by, in effect, notifying the holders thereof to put them in suit within a very brief period. The statutory proceeding is indivisible. The executor or administrator must pursue it to its conclusion. He cannot divide it so as to get its benefits for his estate and evade its burdens imposed for the benefit of the creditors.

But this case does not depend solely upon the non-residence of the defendants, nor is it claimed that such non-residence, by itself, makes the plea of the statute as a bar an equitable defence.

The whole conduct of these non-resident executors is brought

under investigation in order to ascertain whether, after they had called upon the complainant to sue them in New Jersey, they discharged their duty to him with reference to his suit, or whether, by any violation of duty, they caused him to subject his claim to the statutory defence which they afterwards set up.

The complainant had about three months from November or December 1st, 1899, in which to bring his action against these non-resident executors. The defendants produced a copy of a letter dated December 19th, 1899, written by one of the executors, Mr. Clark D. Augustine, who is said to be a New York attorney, addressed to a firm of lawyers in Jersey City, who had acted for the complainant in the presentation of his claim. After referring to other matters, the letter proceeds as follows:

"Do you anticipate that James H. Clark will sue on his claim, if so we should like to have it litigated at once in order to be able to settle the estate. Are you in communication with him?"

No reply to this letter is produced. At the time it was written these lawyers were not acting for the complainant. Four days before, on December 15th, the complainant had placed his claim for suit in the hands of the attorney who has since represented him. The letter indicates distinctly that the defendant executor was not certain that his correspondents represented the complainant at that time, and it is urged, with force, that presumably they replied to the letter and so informed the defendant. However that may be, the complainant testifies that he was never informed of this letter.

The defendants took no steps to inform the complainant how process could be served upon them, although they must have been aware of the difficulty of the situation which their non-residence created. .

The complainant testifies that the defendant Augustine informed him that he resided in Milton, Morris county, New Jersey. This information was communicated to the complainant's attorney, and upon the strength of it, on February 1st, 1900, he forwarded to the sheriff of Morris county a summons and declaration in an action in the supreme court to enforce the complainant's claim. The sheriff kept these papers for a time, and then,

Clark *v.* Augustine.

having failed to effect service, returned them to the complainant's attorney after the expiration of three months from the service of the notice disputing the claim. At most there was not more than about five weeks after the delivery of the papers to the sheriff before the expiration of the statutory period of three months. According to the averment of the defendants' plea there was only one day. As the proofs stand I do not think that any negligence or unnecessary delay can be imputed to the complainant or his attorney.

It is not claimed on behalf of the complainant that any intentional deception was practiced upon him by Mr. Augustine. Mr. Augustine, in his affidavit, says that he

"has never been a resident of Milton, New Jersey, but during the summer months from June until September he went there and stopped at the house of his wife's parents from Friday or Saturday evening until the following Monday."

The complainant's affidavit, in reply, states positively that, prior to the presentation of his claim, Mr. Augustine informed him that he "lived at Milton, in Morris county, New Jersey, and described to him the peculiarities of the place." The defendants made no effort to meet this evidence. As the matter now stands before this court the only conclusion is that the misleading information which caused the complainant to lose his three months in fact came from the defendant.

The complainant shows that, notwithstanding persistent efforts which he made to serve process upon the defendants in an action for the enforcement of his claim after his failure in Morris county, he was unable to accomplish his purpose until in October, 1900, when process was served in the action in the Hudson circuit, in which the statutory bar is pleaded.

Owing to various circumstances, set forth in the affidavit, the prosecution of this new suit in the Hudson circuit court and also the prosecution of the injunction suit in this court have been delayed. The action at law was on the list for trial at the April Term, 1891, of the Hudson circuit, and was then postponed in order that the complainant might apply to this court for the injunction prayed for herein. The bill has only been recently

filed, but all parties here had notice of the intention to apply to this court, and it is not shown that the defendants have been harmed by the delay.

I think the right of the complainant to an injunction against the defence which the defendants have pleaded in the action at law depends on whether or not the defendants must be deemed to have wrongfully caused the complainant to make his fatal delay in prosecuting his action.

That courts of equity do not undertake to amend a statute of limitation when they grant an injunction restraining its use as a defence, because such use would be fraudulent or inequitable, is no longer open for discussion. All these statutes of limitation create merely a personal right, for the benefit of individuals, and may therefore be waived. *Quick* v. *Corlies, 10 Vr. 11 (1876)*. Generally speaking, it may be said that the bar of the statute is raised when the plaintiff has elected to allow it to be created and the defendant has elected to invoke its benefits. When the defendant not only has elected to set up the statute, but has also previously, by deception or by any violation of duty toward the plaintiff, caused him to subject his claim to the statutory bar, he must be charged with having wrongfully obtained an advantage which equity will not allow him to hold. It is a matter of no importance that the advantage which he has wrongfully secured is based upon this sort of a statute which, at any time, he is permitted to waive.

In large numbers of cases where the defendant has caused the plaintiff to subject his claim to the statutory bar by procuring an injunction upon its prosecution or by fraudulently concealing its existence, or by apparently waiving, by a promise or otherwise, the benefits of the statute as a defence, courts of equity have restrained the defendant from pleading the statute on the ground that he had estopped himself or that to permit him to interpose such a plea would be to allow him to take advantage of his own wrong. *Doughty* v. *Doughty, 2 Stock. 347 (1855)*; *Cowart* v. *Perrine, 6 C. E. Gr. 101 (1870)*; *Quick* v. *Corlies, supra*; *Freeholders* v. *Veghte, 15 Vr. 509 (1882)*; *Lamb* v. *Martin, 16 Stew. Eq. 36 (1887)*; *Holloway* v. *Appelget, 10 Dick. Ch. Rep. 583*

*(1897)*; *19 Am. & Eng. Encycl. L. (2d ed.) 243, 286, 288,* and cases cited.

In the case of *Holloway* v. *Appelget* the court of errors and appeals, adopting the opinion of Vice-Chancellor Reed in this court, holds that a court of equity would enjoin a defendant from setting up the statute of limitations as a defence "although the cause of action may not have arisen out of a technically fraudulent act, if the defendant has employed any means to mislead the plaintiff or to hide from him the fact that a cause of action has arisen."

It seems to me that the principle running through all of the decisions above cited extends to a case like the one under consideration. In all these cases we find that the plaintiff has not intentionally or negligently allowed his time for suit to elapse, but that the defendant by his conduct in some way has brought about that result. There does not seem to be any distinction between conduct of the defendant, which has misled the plaintiff as to the existence of the cause of action, and conduct of the defendant, which has misled the plaintiff as to the time, place or manner in which the plaintiff's suit should be brought. In each case the plaintiff has not intended to allow his statutory time for suit to elapse, and in each case the defendant has misled the plaintiff into suffering that thing to occur.

It is not necessary to decide that when the non-resident executor or administrator notifies the creditor that his claim is disputed he must also inform such creditor how process may be served in any suit which he may elect to bring. The propriety of giving such information voluntarily would suggest itself to any fair mind. The creditor has sworn to his claim and presented it against the estate. Still the non-resident executor or administrator who, as in this case, could easily be found and communicated with by the creditor, might await a notice from the creditor that he had elected to sue and a request that arrangements be made for the service of process. However this may be, the non-resident executor or administrator is bound to set fairly in view of the peculiar situation for which he is responsible, and, in my opinion, is bound to see that the fact of his non-residence does not prevent the creditor from bringing the suit which he has forced the creditor to bring.

Clark *v.* Augustine.

The affidavits of the defendants allege that the complainant had interviews with them during the three months following the service of the notice that the complainant's claim was disputed. This is denied by the complainant. However that fact may be, it is plain that during the whole of the three months in question the complainant and his attorney were reposing upon the action at law which they supposed they could effectually bring or had effectually brought. The complainant during that period would not be expected to address the defendants in any way upon the subject of the service of process upon them when he had no reason to doubt that they had been, or would be, legally served with process in his suit in the State of New Jersey.

It is the residence of both executors in a foreign state and the misleading information which one of them gave to the complainant, which, taken together, constitute the equity of the complainant's application for an injunction in this case.

I do not think that the force of this misleading information is materially affected if it be conceded that there was no intention on the part of the defendant executor to mislead. When an executor, in fact residing out of this state, by his conduct in apparently residing in this state during part of the year or by his statements in regard to such temporary residence which easily can be misunderstood, has in fact misled the creditor whom he has notified to sue, the result, in my judgment, is the same as if such executor had actually intended to deceive, provided, of course, that the creditor has acted in good faith and without negligence. In such a case the presumption of fact, from the creditors' point of view, is that the executor who is administering a New Jersey estate under the direction of the courts of New Jersey is a resident of the state.

I think that these non-resident executors must be deemed to have caused the plaintiff to subject his claim to the statutory defence which they set up, and that the complainant therefore is entitled to the injunction for which he prays. If the defendants so desire, arrangements can be made and terms imposed which will secure the postponement of the trial of the action until the final hearing in this case. The defendants need not be compelled to go to trial without their plea if they think that further proceedings in this cause will relieve them of the injunction.