WILLIAM DONNINGTON, Administrator of CAROLINE M. DONNINGTON, deceased, and DAVID SANDERSON, v. MARY R. MITCHELL, surviving Administratrix of NATHANIEL MITCHELL, deceased, et al.

On the death of the wife the husband may administer on her estate, and in that character take to himself for his own benefit, *jure mariti*, all her personal property; and in case he dies before he shall have fully administered on such estate, his representatives are entitled to the property.

If letters of administration upon the wife's estate are granted to the next of kin of the wife, they are deemed as trustees only for the representatives of the husband.

When the property of the wife by marriage agreement, executed before the marriage, is conveyed to trustees, and no disposition is made of the property in the event of the wife's death before the husband—upon the death of the wife the property will go to her husband.

The rights of the husband are not suffered to be taken away unless by express terms, and his rights are as complete in property placed in trust as in any other.

BILL for an account and for relief, filed the 4th of February, 1837. It states, that Nathaniel Mitchell, of Elizabeth-Town,

died about the first of June, 1828, leaving Albert R. Mitchell and Caroline M. Mitchell, his children, and Mary R. Mitchell, his widow, surviving. That the said Nathaniel Mitchell died seized of a valuable real estate, which upon his death descended to his children; and that the said Caroline M. Mitchell, upon the death of her father, became entitled to one third of the rents, issues, profits and annual income of the said real estate, and so continued until her death. That the said Nathaniel Mitchell also died possessed of a large personal estate, amounting, after the payment of debts and funeral expenses, to fifty thousand dollars; to one third of which the said Caroline M. Mitchell also became entitled on the death of her father. That upon the death of the said Nathaniel Mitchell, the said Mary and Albert, his widow and son, took out letters of administration upon his estate, possessed themselves of all his personal property, entered into the receipt of the rents, issues and profits of his real estate, and continued to receive and hold the same to their own use. That on the 19th of December, 1830, the complainant, William Donnington, intermarried with the said Caroline M. Mitchell, and that the marriage relation between them subsisted until her death. That before the marriage between the said William and Caroline was solemnized, an indenture of three parts, bearing date on the 18th day of December, 1830, between William Donnington of the first part, Caroline M. Mitchell of the second part, and Mary R. Mitchell of the third part, was executed by the said William and Caroline, whereby, after reciting that a marriage was intended shortly to be solemnized between them, and that the said William had agreed that if the same should take effect, he, his executors, administrators or assigns, should not intermeddle with, nor have any right, title or interest, in law or equity, in or to any part of the rents, issues or profits of the real estate of the said Caroline, or to any part of her estate, real or personal, inherited from her father, but that the same should always remain to the said Caroline, or to the uses expressed in said deed. The said William Donnington covenanted and agreed that the estate, real and personal, of the said Caroline, should, notwithstanding

the marriage, be accounted, reckoned and taken as a separate and distinct estate of and from the estate of him the said William Donnington, and be in no wise liable or subject to him, or to the payment of any of his debts, but that the same, with the interest and profits thereof, should be appropriated to the purposes in the said deed specified. And the said Caroline, in and by the said deed, conveyed and transferred the whole of her estate, real and personal, to the said Mary R. Mitchell, in trust—to pay the rents and interest of the same to the said Caroline, or to vest them in the name of the said Mary, upon such securities as she the said Caroline might direct, in trust for the said Caroline; and with the assent and concurrence of the said Caroline, to sell and transfer any part of the said estate; and also in trust that the said estate, and the proceeds and income thereof, should be taken and enjoyed by such person or persons, and for such uses, as the said Caroline should at any time limit and direct, either by her last will and testament duly executed according to law, or by any other writing signed by her in the presence of two or more credible witnesses. The bill further states, that the said articles of agreement were never executed by the said Mary R. Mitchell; and insists, that by reason thereof, the said articles of agreement never took effect, and that the same are inoperative and void in law. The bill further states, that the said Caroline died on the 17th of August, 1836, leaving the said estate, real and personal, and the rents and interest thereof, undisposed of, without having executed any last will and testament according to law, or any writing signed by her as specified in the said articles of agreement. That after the death of the said Caroline, letters of administration upon her estate were granted in due form of law to the said William Donnington; and that, he being unable himself to prosecute his bill for the recovery of the goods and chattels, rights and credits which were of the said Caroline at her death, and being indebted to one David Sanderson, on the 30th of January, 1837, he conveyed all his rights as such administrator, in the estate of the said Caroline, to the said David Sanderson, upon certain trusts in the said deed specified.

The bill prays an account of the personal estate of the said Nathaniel Mitchell, and of the rents and profits of his real estate, from the time of his death until the death of the said Caroline; and a decree in favor of the complainants for the portion of the said Caroline in the same, and for all her personal estate, and the rents and profits of her real estate, in the hands of the defendants.

After the filing of the bill, Albert R. Mitchell, one of the defendants, died, and the suit was continued against his executors. Separate answers were filed by Mary R. Mitchell, as surviving administratrix of Nathaniel Mitchell, deceased, and by the executors of Albert R. Mitchell. The answers disclose no new facts. They admit the material allegations contained in the complainants' bill, but insist, that the articles of agreement signed by the said William and Caroline are valid and operative in law, and that thereby the said William absolutely relinquished all right, claim and interest in the estate of the said Caroline, both real and personal, and covenanted and agreed that the same should be her own separate property, free from his control, and that he thereby deprived himself of all benefit and advantage to be derived therefrom.

The cause was heard upon the pleadings.

*S. Scudder* and *I. H. Williamson*, for complainants.

*J. J. Chetwood* and *Frelinghuysen*, for defendants.

The Chancellor. There can be no doubt that the complainants in this case are entitled, upon the *general rule*, to an account at the hands of the defendants. The bill was filed by William Donnington, in his life-time, as administrator of his wife, for an account of her personal estate. He died, and the complainants have obtained letters of administration of the husband's estate, and also, *de bonis non*, of the estate of his wife. On the death of a wife the husband may administer on her estate, and in that character take to himself, for his own benefit, *jure mariti*,

all her personal property; and in case he dies before he shall have fully administered on such estate, his representatives are entitled to the property. If letters of administration upon the wife's estate are granted to the next of kin of the wife, they are deemed as trustees only for the representatives of the husband. *Elliott* v. *Collier*, 3 *Atkyns*, 526; *Watt* v. *Watt*, 3 *Ves. jun.* 244; *Stewart* v. *Stewart*, 7 *Johns. Ch.* 229; *Squib* v. *Wyn*, 1 *P. Wms.* 378; 2 *Kent's Com.* 135. All the cases agree on this subject, and as a *general rule* it was not denied on the argument. It has indeed been made a question, not whether the husband is entitled to the separate estate of his wife, but in what character, whether as next of kin of the wife, or as husband. If he be entitled, it is not of much importance to discuss in which of these characters he takes. The better opinion, however, certainly is, that he takes as husband; for, strictly speaking, he cannot be said to be of kin to the wife. This subject, with a reference to the cases, will be found fully discussed and settled in the case just cited from 7 *Johns. Ch.* 229.

But this rule, it is equally clear, must and will be controlled by any legal instrument which shall make a different disposition of the wife's estate. Prior to his marriage, the complainants' intestate and his wife did enter into articles respecting her separate estate, and the whole case turns upon the true construction of that instrument.

The father of Mrs. Donnington died a few years prior to her marriage, and left to his family, consisting of his wife and two children, a very considerable estate. The marriage agreement was signed by these parties just before their marriage; and while there are some general expressions in it which look like a total abandonment of all claim on the part of the husband to any interest in the estate, yet it manifestly was intended to guard against the husband and his creditors only during the coverture. There is no disposition made of the property in the event of the wife's death before her husband, but that is reserved for the future appointment of the wife, and she died without making any such appointment.

The instrument is dated on the 18th day of December, 1830, the day before the marriage was solemnized; and after stating that Nathaniel Mitchell died intestate, leaving certain real estate, which is therein described, to his family, as well as personal property, which had never been divided, and that a marriage was about to be solemnized between the parties, it was further recited, that William Donnington, the intended husband, had agreed that if the marriage should take place, then, notwithstanding the marriage, the said William Donnington, his executors, administrators or assigns, should not intermeddle with or have any right, or title, or interest in the same, (using very strong words,) but that the same should remain to his intended wife, or to such uses as should be therein afterwards expressed. The said William Donnington covenants that all the said estate shall be reckoned and taken as a separate and distinct estate, and be no way liable to him or to the payment of his debts, but shall be disposed of as therein after mentioned. Caroline M. Mitchell, the intended wife, then conveys all her estate to her mother upon certain trusts, and it is to these trusts that we are especially to look. The whole instrument, as well in the recital as the covenants on the part of the husband, point to these for the future direction of the estate. By this trust it is declared, that all the said estate, and the income thereof, shall go to such persons, and for such uses, as the said intended wife shall at any time during her life direct, either by her last will and testament in writing duly executed according to law, or by any other writing whatever signed with her hand in the presence of two or more witnesses. The disposition of the property after the wife's death, remained to be made by the wife, either by will or other writing, and none such was ever made. Who, then, is entitled to the personal estate—for that alone can be the subject of enquiry here—the next of kin of the wife, or the husband? The wife has an estate in the hands of trustees, undisposed of. It belonged to her at her death, and must, in the absence of any disposition of it, go to her husband. The rights of the husband, it will be seen, are not suffered to be taken away, unless by express terms, and

[Adm'rs of Donnington et al. v. Adm'rs of Mitchell et al.]

his rights are as complete in property placed in trust as in any other. The case of *Stewart* v. *Stewart*, in 7 *Johns. Ch.* 229, before cited, is very much like the present, and it was held to have been only a provision during coverture, and that the husband was entitled, at the death of the wife, to the estate. That was a conveyance to trustees, subject to the future disposition of the wife by will or other writing, and no such writing was ever executed. There were in that case two important facts militating against the construction placed upon the writing by the court, which do not exist here. The recitals declared that the intended wife desired to provide for herself and *her children*, but this was not in the granting part of the deed, and further, the husband released all his marital rights over the property. See also on this subject, *Clancy on Rights of Women*, 11, and 626, *note D.; Bailey* v. *Wright*, *Hawkins* v. *Hawkins*, 10 *English Cond. Ch. Rep.* 2.

It would have been very easy had it been the intention of the parties, to have declared the trust in favor of the next of kin, or in some other manner to have shown a determination to exclude the husband. No such trust having been declared, nor indeed any disposition whatever made of the property after the death of the wife, I can consider this instrument only as a provision during coverture, leaving the rights of all parties, on the death of the wife, to be settled by the law. It leaves the estate as if no settlement had been made.

Some objections were stated on the argument to the settlement, which did not, I confess, strike me as being well founded; but it is unnecessary to examine them, because, taken as a valid deed, it no way, in my opinion, impairs the rights of the husband.

I shall direct an account to be taken by a master, of the personal estate of the wife, and of the rents and profits of her real estate to the time of her death.

Order accordingly.

[An appeal was taken by the defendants from the decree in this cause, which is still pending undecided.]